Paul L. WHATLEY, Plaintiff–Appellant,

v.

METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, Defendant–Appellee.

No. 79–2181.

United States Court of Appeals, Fifth Circuit. Unit B

Dec. 19, 1980.

Rehearing Denied Jan. 21, 1981.

John R. Myer, Atlanta, Ga., Demetrius C. Newton, Birmingham, Ala., for plaintiff–appellant.

Huie, Ware, Sterne, Brown & Ide, Paul A. Howell, Jr., Atlanta, Ga., for defendant–appellee.

Before JONES, FAY and HENDERSON, Circuit Judges.

FAY, Circuit Judge:

The issue in this appeal is whether section 704(a) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–3(a) (1976)) prevents an employer from dismissing an employee whose job is handling discrimination complaints when the employee handles those complaints in a manner contrary to the instructions of the employer. Paul L. Whatley, plaintiff–appellant, claims he was discharged by defendant–appellee, Metropolitan Atlanta Rapid Transit Authority (MARTA), for sending a complaint to a federal agency charging MARTA with sex and race discrimination. We affirm the trial court's holding that appellant was asked to resign for reasons other than retaliation against his assisting another in filing a complaint.

In 1972, appellee MARTA, a public authority established by the state in 1965, purchased the Atlanta Transit System. MARTA funding comes in part from Urban Mass Transportation Administration (UMTA), a federal agency. From its inception MARTA engaged in programs designed to ensure equal employment to all persons without regard to race, sex, national origin, or color. With this aim in mind, MARTA established a committee known as the "Compliance Committee." This committee was charged with overseeing MARTA's internal employment practices as well as assuring that MARTA used only contractors and vendors whose employment practices were consistent with its nondiscrimination policies.

In 1972, Mr. John L. Cole, a black male, was employed as Assistant General Manager for Equal Employment Opportunity matters. In December, 1972, he hired appellant, Paul L. Whatley, also a black male, to serve as Director of Compliance in the Equal Employment Opportunity office. Although appellant's duties as Director of Compliance overlapped those of Cole, as Whatley testified at trial, he was subordinate to Cole and was required to report to Cole.

The record establishes that shortly after joining the MARTA staff, Whatley began to violate the normal reporting procedures of MARTA and to assume duties beyond his job description.

On March 2, 1973, appellant, without consulting Cole, made derogatory comments about the state of MARTA's equal employment affairs before the Compliance Committee and the press. He suggested that federal funding from UMTA could be cut off if UMTA were aware of the noncompliance. It was later learned that many of his charges were false or misleading, but Cole and his superiors were required to explain the charges.

After this meeting, Cole orally reprimanded Whatley for failing to report his intention to make his criticisms known. The oral reprimand was followed by a letter of March 26 reminding appellant that his

job was to make recommendations to Cole, not to judge the performance of the authority or outside vendors.

On March 15 and 16, appellant took issue with Cole concerning directions for particular tasks. In memoranda Whatley challenged Cole, and without Cole's consent or knowledge, sent carbon copies to MARTA's general manager. Subsequently, Cole reminded him of the established reporting procedures, and requested that he cease sending copies of his memoranda to the general manager. Appellant failed to comply with this request.

The evidence reflects that throughout this period, contractors, vendors, and MARTA employees complained of Whatley's approach to his job. These complaints indicated that he was hostile and accusatory. Cole feared that relationships with vendors would be jeopardized. On several occasions Cole and appellant met with Mr. Charles Reynolds, Chairman of the Compliance Committee, to discuss their differences. A meeting was also held with Mr. G. Duke Beasley, member of the regional staff of E.E.O.C. in an effort to improve the situation.

Into this already deteriorating picture entered Ms. Vivian Baskerville, a black female dissatisfied with her position on the MARTA team. Ms. Baskerville had applied for the position of Manager of Supportive Services. Her own supervisor, also a black female, had failed to recommend her for the position and sought to terminate her for incompetence. Cole was aware of the supervisor's dissatisfaction and had concluded there was no race or sex discrimination involved. Cole advised appellant not to become involved with Baskerville and not to hire her in the E.E.O. office.

In organizing internal office procedures, Cole had established a policy regarding complaints. An employee could file a complaint with the E.E.O. section of MARTA and an investigation would take place be-

fore such a complaint would be forwarded to UMTA. This procedure would allow Cole to include an informed endorsement or recommendation to UMTA. Should an employee object to this procedure, he or she was to be told that a complaint could be filed with the E.E.O.C. office in Atlanta or mailed directly to UMTA in Washington, D.C. When Ms. Baskerville visited Whatley about her complaint, she indicated she did not want an investigation by MARTA as she suspected Cole was already biased against her. Rather than instructing Ms. Baskerville regarding the MARTA policy and suggesting she file with the E.E.O.C. office or mail her complaint to UMTA, appellant forwarded the complaint to UMTA, with an official request that UMTA investigate the charge.

On July 10, 1973, appellant wrote to the Chairman of the Compliance Committee criticizing Cole and suggesting that Cole had made personal purchases through MARTA's Purchasing Department. To his embarrassment, Cole was required to produce a receipt proving independent purchase. Also in July, Cole learned that appellant had been granting "administrative leave," leave without pay, to the Equal Employment Opportunity compliance officers without his knowledge. This contravened MARTA rules which required that all such leave be approved by Cole.

On July 23, 1973, Cole requested appellant's resignation.

In August, 1973, appellant filed a charge of discrimination with UMTA. UMTA dismissed the charge for lack of cause. On January 3, 1974, appellant filed his charge of discrimination with E.E.O.C. The E.E.O.C. found reasonable cause to believe a Title VII violation had occurred, but upon reconsideration, this finding was overturned by the full Commission. The Commission's ruling was delivered to appellant on September 4, 1975, and appellant filed suit in the district court on February 3, 1976.[1]

 The issue of retaliation for participation in an employment discrimination

---

1. The trial court, relying on our decision in *Zambuto v. American Telephone and Telegraph* *Co.*, 544 F.2d 1333 (5th Cir. 1977) excused appellant's failure to comply with the ninety

charge is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668 (1973); *Corley v. Jackson Police Dept.*, 566 F.2d 994, 998 (5th Cir. 1978). The complainant must carry the initial burden of establishing a prima facie case of discrimination. The burden of going forward then shifts to the defending party to "articulate" some legitimate, non–discriminatory reason for the employee's rejection or discharge.[2] *See Burdine v. Texas Department of Community Affairs*, 608 F.2d 563 (5th Cir. 1979); *cert. granted,* —— U.S. ——, 100 S.Ct. 3009, 65 L.Ed. 1112 (1980); *Falcon v. General Telephone Company of the Southwest*, 626 F.2d 369 (5th Cir. 1980). Once that step has been accomplished, the court must inquire whether an employer's stated reasons for the employment decision were mere pretext. *McDonnell Douglas, supra*, 411 U.S. at 804, 93 S.Ct. at 1825; *see also Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir. 1977).

■ Section 704(a) of Title VII[3] is the primary source of protection against retaliation for those who participate in the process of vindicating civil rights through Title VII. Under that section broad protection is afforded to the participant in order to effectuate the purposes of Congress. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1006, n.18 (5th Cir. 1969). To prove a prima facie case under section 704, the plaintiff must establish (1) that there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal·link between the participation and the adverse employment action. *See generally*, B. Schlei & P. Grossman, *Employment Discrimination Law*, Ch. 15 (1976 and Supp. 1979).

In the case *sub judice*, testimony presented during plaintiff's case indicated that appellant was an Equal Opportunity Compliance officer and that part of his job was to assist MARTA employees in handling discrimination matters. Appellant testified that his discharge occurred after he had filed with UMTA a charge of discrimination on behalf of Baskerville. MARTA responded with its version of the facts and reasons for discharge. The district court concluded that appellant had participated in a statutorily protected activity, but that he was not asked to resign because of that participation. The court held that the discharge was for other valid business reasons.

Taking the record as a whole, it is clear the MARTA was able to articulate valid business reasons for the dismissal that were not pretextual. MARTA's evidence showed

---

day requirement (42 U.S.C. § 2000e ·5(f)(1) (1976). Appellee failed to file a cross appeal on this issue and we have held that the ninety day requirement is not jurisdictional in the sense that it is the only means of conferring jurisdiction in the district court. *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979); *see McArthur v. Southern Airways, Inc.*, 569 F.2d 276, 278 (5th Cir. 1978) (Rubin, J., dissenting) *citing Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 928–29 (5th Cir. 1975).

**2.** We have held that "articulating" a legitimate *reason means adducing legally sufficient proof to rebut the plaintiff's proof.* *Jeffries v. Harris County Community Action Assn.*, 615 F.2d 1025 (5th Cir. 1980), *citing Burdine v. Texas Dept. of Community Affairs*, 608 F.2d 563 (5th Cir. 1979), *cert. granted,* —— U.S. ——, 100 S.Ct. 3009, 65 L.Ed. 1112 (1980).

**3.** Section 704(a) provides as follows:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the–job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful ´employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

that it was not the fact that appellant filed a complaint for Ms. Baskerville but the manner in which he did so that upset his employer. In other words, after hearing all the evidence, the trial court found that appellant's discharge was based partly on the *manner* in which the Baskerville complaint was handled and in no way upon the processing of such a complaint.[4] Failing to follow prescribed administrative procedures is not a statutorily protected activity. Title VII cannot be held to immunize an employee from all consequences of his behavior merely because part of his job happens to require the handling of discrimination complaints. *See Jeffries v. Harris County Community Action Association*, 615 F.2d 1025 (5th Cir. 1980); *Hochstadt v. Worcester Foundation*, 545 F.2d 222 (1st Cir. 1976); cf. *Garrett v. Mobil Oil Corp.*, 531 F.2d 892 (8th Cir. 1976).

The evidence shows that John Cole was aware of the poor quality of Baskerville's work and that he considered incompetence, rather than race or sex discrimination, to be the source of her trouble with her supervisor. Whatley confirmed that when he and Cole were in Washington, D.C. in mid June, they had discussed Ms. Baskerville. She had applied for a secretarial position in the E.E.O. office and Whatley was inclined to offer her a position. When Whatley informed Cole of his intention to hire Baskerville, Cole expressed his disapproval in no uncertain terms and advised him not to become involved with Baskerville.

The following week Baskerville came into Whatley's office to file a charge of discrimination. He advised her of her options to file with MARTA, UMTA, or E.E.O.C. Knowing how Cole felt about her performance, Baskerville chose to file with UMTA. Despite Cole's earlier instructions, and without reporting to Cole, Whatley forwarded Baskerville's complaint to UMTA with an official request from MARTA's equal opportunity office for an UMTA investigation.[5]

Appellant relies heavily on Cole's statement that before the June meeting in Washington he had no "inkling" he would fire Whatley as proof that the filing of the discrimination charge was the reason for his dismissal. The evidence reveals, and the trial court found, however, that the dismissal was a culmination of problems growing out of appellant's manner of handling his job, his lack of cooperation within his office, his mismanagement of his staff, his refusal to comply with the terms of his job description, and his refusal to follow instructions from his supervisor. Cf. *Windom v. City of St. Louis*, 427 F.Supp. 806 (E.D.Mo.1977) (discharge not retaliation where court viewed allegation of sex discrimination as the "final straw" in long line of attacks on supervisor). He has not made out a case for protection under Section 704(a). *Doe v. AFL–CIO Department of Organization, Region 6*, 405 F.Supp. 389 (N.D.Ga.1975), aff'd. 537 F.2d 1141 (5th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977). The findings of the trial court are clearly not erroneous and, therefore, the judgment is AFFIRMED.

---

4. Since no protected activity was involved in Whatley's discharge, we are not deciding whether a discharge based on several reasons, at least one of which is impermissible under Section 704(a), violates an employee's rights. That issue is not presented here. *See, Carter v. Maloney*, 631 F.2d 40 (5th Cir. 1970) (A.D.E. A.); *Hochstadt v. Worcester Foundation*, 545 F.2d 222, 234 n.8 (1st Cir. 1968); cf. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed. 471 (1977).

5. Whatley's request, written on MARTA stationery, stated:

Enclosed you will find a letter from a MARTA employee requesting that your office conduct an investigation into a charge of alleged discrimination. You will also find enclosed a statement detailing her charge.

We will appreciate your immediate attention to this matter.

Sincerely yours,

/s/

Paul L. Whatley

Director of Compliance