Ruby C. MILLENDER, Plaintiff,

v.

Tommy HERRING, Commissioner of the Alabama Department of Corrections, State of Alabama, Department of Corrections, Defendants.

Civ. A. No. 94–D–350–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 18, 1995.

**194**

Richard A. Meelheim, Birmingham, AL, for plaintiff.

Horace W. Lynn, Andrew W. Redd, Alice Ann Bryne, Alabama Dept. of Corrections, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is presently before the court on Defendants' Motion for Summary Judgment, which was filed August 26, 1994. Defendants filed a supporting brief contemporaneously with said motion. Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment on September 12, 1994. For reasons stated below, Defendants' Motion for Summary Judgment is due to be denied.

### Jurisdiction & Venue

Jurisdiction is proper pursuant to 28 U.S.C. 1331 as Plaintiff alleges a violation of 42 U.S.C. § 2000e, Title VII.[1] Personal jurisdiction and venue are not contested.

### Facts/Contentions

Ruby C. Millender (hereinafter the "Plaintiff" or "Millender"), an African–American

female, is a correctional law officer of the State of Alabama, Department of Corrections (hereinafter the "DOC"). Plaintiff became employed by the State of Alabama on September 21, 1981, as a correctional officer trainee. Millender attained the position of correctional officer on March 21, 1982. Plaintiff was then assigned to the Staton–Annex facility of the DOC.

On June 22, 1983, Millender was promoted to Correctional Officer II and transferred to the Decatur facility. During May, 1984, Plaintiff was transferred to the East Thomas Work Release Center. In August of 1988, Millender was promoted to Correctional Officer Supervisor I and transferred to the Limestone Correctional Facility.

In 1990, Millender applied for several transfer positions in the Birmingham area, but was not selected. Subsequently, Plaintiff filed a sex discrimination charge with the Equal Employment Opportunity Commission (hereinafter the "EEOC") on April 5, 1991. Plaintiff alleged that she was not transferred because of her sex. In this charge, Millender alleged that John Winston (hereinafter "Winston"), Director of Childersburg Boot Camp, Larry Burton (hereinafter "Burton"), Warden of St. Clair Correctional Facility, and John E. Nagele, Warden of West Jefferson Correctional Facility engaged in gender-based discrimination in not transferring her. On January 24, 1992, the EEOC issued Plaintiff a right to sue letter, but Millender did not pursue a judicial course of action at that time.

As a result of a proration roll back of employees within the DOC, Millender was transferred from Limestone Correctional Facility to Childersburg Community Work Center (hereinafter "Childersburg") and was demoted from Correctional Supervisor I to Correctional Officer II on April 4, 1992. On May 14, 1992, Plaintiff was carpooling with Correctional Officer I James Hasberry (hereinafter "Hasberry"), an individual under Plaintiff's supervision. On this date, Hasberry mistakenly departed Childersburg while

---

1. Plaintiff has exhausted her administrative remedies as she filed a claim with the Equal Employment Opportunity Commission within 180 days of the last discriminatory act and has filed this judicial action within 90 days of receiving her right to sue letter from the Equal Employment Opportunity Commission.

in possession of the key to the facility's front gate. The parties differ as to Millender's actions after Hasberry informed Plaintiff that he was in possession of said key.

Defendants contend that after Hasberry apprised Plaintiff that he was in possession of the key, Plaintiff advised Hasberry to return the key the following day and to avoid answering the telephone before he returned to work. Defendants claim that the key was not returned the next day and that on May 16, 1992, Officer Hasberry reported to Sgt. Millender that he could not locate the key. On May 21, 1992, Officer Hasberry allegedly again told Plaintiff that he could not find the key. According to Defendants, Plaintiff failed to document this "unusual occurrence", in violation of her duties. Defendants assert that Millender failed to report her knowledge or role in the incident although she had been instructed to file an incident report regarding the missing key.

Officer Hasberry returned the key on May 22, 1992. Defendants contend that Officer Hasberry then wrote an incident report documenting that the key had been found. Millender then allegedly redrafted the incident report and forwarded it to Officer Hasberry for his signature.

Plaintiff contends that following a security check of the facility, Hasberry returned the key and represented to her that he found the

key outside the facility in the parking lot. Hasberry then allegedly placed the key in its designated place. Millender claims that on May 23, 1992, an Officer Gwin noticed that the key had been returned and inquired as to who had found the key. Following this inquiry, Hasberry allegedly responded, "I don't know, it just showed up on the board."

Plaintiff states that she indeed prepared an incident report on May 24, 1992, but the report contained only Hasberry's thoughts and reflections regarding the key. Plaintiff asserts and Defendants do not in any manner refute that Hasberry admitted that he had been less than truthful in giving his account of the Key Affair and that the key was at his residence the entire time.

Defendants claim that Millender was served with a notice of intent to demote and suspend her for her "role" in the key affair. Allegedly and in accordance with departmental rules and regulations, a three member board convened to determine the extent of Plaintiff's punishment. Defendants assert that the board found Millender guilty of six of seven charges.[2] *See* Def.Brief in Support of Summ.Judg., p. 3. Based upon this finding and in light of Plaintiff's overall work record, Defendants claim that Commissioner Morris Thigpen ordered Millender's demotion to Correctional Officer I and a fifteen day suspension without pay.[3]

---

2. Plaintiff was accused of violating the following provisions of the DOC's Administrative Regulation 207, "Standards of Conduct, Department of Corrections Employees" when she failed to report and document the key at issue and its attending circumstances:
 1. Section III, 1B: "Render full, efficient and industrious service."
 2. Section III, 1C: "Respond promptly to directions and instructions."
 3. Section III, 1D: "Exercise courtesy and tact."
 4. Section III, 1E: "Protect and conserve funds, property, equipment and materials."
 5. Section III, 1G: "Observe the laws, rules and regulations."
 6. Section III, 1H: "Recognize their responsibility for taking an active part in the Department of Corrections affairs."
 7. Section III, 1I: "Uphold, with integrity, the public trust involved in their position."
 8. Section III, ¶ 4: Employees will make a complete written report of all unusual incidents that occur during a tour of duty.

*See* Winston Memo. to Millender, 22 June 1992.

3. Millender's past disciplinary record consists of the following:
 1. November 15, 1991—fifteen day suspension for failure to attend hearing.
 2. June 13, 1991—letter of reprimand for non-compliance with administrative regulations.
 3. May 22, 1990—five day suspension for failure to follow proper procedures.
 4. July 12, 1989—letter of reprimand for failure to attend mandatory meeting.
 5. May 10, 1989—letter of reprimand for failure to follow proper instructions.
 6. December 5, 1988—written warning for failure to report unusual incident.
 7. September 19, 1986—letter of warning for failure to follow proper instructions.
 8. January 25, 1984—letter of reprimand for failure to follow proper procedures.

Although Commissioner Thigpen may have ultimately ordered Millender's demotion and suspension, Defendants do not deny that Winston, the subject of a recent EEOC charge executed by Plaintiff, had sole discretionary responsibility to: 1) determine whether to charge Plaintiff and/or Hasberry with rule violations; 2) determine the rules violated; and 3) recommend the punishment for such violations. Also, Plaintiff contends, and Defendants do not deny, that Winston selected the three member panel which determined Millender's fate. Moreover, Plaintiff claims that although the Commissioner of Prisons makes final determinations regarding penalties he generally "rubber stamps" the warden's, Winston's, recommendations.

Millender filed a subsequent charge with the EEOC on July 6, 1992, alleging that she had been discriminated against on the basis of gender and for filing the prior EEOC charge. Plaintiff claimed that nonprotesting supervisory males were not disciplined as harshly as Plaintiff for committing similar acts or engaging in comparable conduct. Millender asserted that officers who had been demoted as a consequence of proration were being reinstated to the positions they held prior to the institution-wide roll back.

The EEOC issued its Determination on October 22, 1993. The EEOC stated that evidence discloses that several nonprotesting males who were in supervisory roles and under the directorship of Winston, one of the individuals against whom Plaintiff lodged her previous charge of discrimination and the person recommending Plaintiff's punishment, had violated many work rules similar to Plaintiff but were not comparably disciplined. The EEOC also noted in its Determination that Winston's stated reason for recommending that Plaintiff be suspended for fifteen days and demoted from Correctional Officer II to Correctional Officer I is a pretext for discrimination based on Millender's sex and a retaliatory response for filing a previous charge of discrimination.

Plaintiff then filed the above-styled lawsuit alleging that Defendants discriminated against her because of her sex, in her demotion and permanent removal of her name from the reinstatement list. Millender brought her action pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII").

On August 26, 1994, Defendants filed the motion presently before the court. Defendants contend that Plaintiff has failed to demonstrate a prima facie case of discrimination and, in failing to so do, has failed to satisfy her burden. Therefore, Defendants assert that they are entitled to judgment as a matter of law in this employment discrimination action.

### *Summary Judgment Standard*

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## Discussion/Analysis

### A. Gender–Based Discrimination

 In order for a plaintiff-employee to prevail on a Title VII claim she must show that the employer intentionally discriminated against her when making the employment decision(s) which gave rise to the suit. *Meeks v. Computer Associates International,* 15 F.3d 1013, 1019 (11th Cir.1994) (citing *EEOC v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1570 (11th Cir.1993)). While direct proof of discriminatory intent may be preferred it is not a *sine qua non* to prevail in a Title VII discrimination action. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff-employee must first demonstrate a prima facie case of unlawful discrimination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 248, 101 S.Ct. 1089, 1091, 67 L.Ed.2d 207 (1981).

 Put differently, *McDonnell Douglas'* burden-shifting approach places the initial burden on the Title VII plaintiff to show action(s) consummated by an employer "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the act.' " *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *Teamsters v. United States,* 431 U.S. at 358, 97 S.Ct. at 1866)). The *McDonnell Douglas/Burdine* model for disparate treatment cases is appropriate in sex-based discrimination actions. *Miranda v. B & B Cash Grocery Stores, Inc.,* 975 F.2d 1518, 1528 (11th Cir.1992).

In the instant action, the defendants contend that Plaintiff has failed to sufficiently demonstrate a prima facie case of unlawful discrimination. Defendants correctly assert that Plaintiff must produce specific supporting facts in addition to her allegations of discrimination to avoid summary judgment, *see Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985), as "conclusory allegations without specific supporting facts have no probative value." *Evers,* 770 F.2d at 986 (citing *Gordon v. Terry,* 684 F.2d 736, 744 (11th Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983)). However, the court finds that this argument is not available to the defendants in this action.

 In its Determination, the EEOC found that evidence existed which showed that nonprotesting, supervisory males under the directorship of Winston were not treated as harshly for transgressing similar rules. The EEOC cited specific examples to substantiate its determination. First, a male Captain who neglected to report his arrest for driving under the influence and illegal possession of a weapon received a counselling session. Following a conviction of the same offenses, the Captain was awarded only a Letter of Reprimand. The EEOC noted, and the Court agrees, that the penalty in that situation should have been a written reprimand up to five (5) day suspension for the first offense and at least a fifteen (15) day suspension up to dismissal for the conviction.[4] The EEOC found that this same individual subsequently received a letter of conference for not purchasing haircut tickets and meal vouchers before using the facility's services. Moreover, the EEOC stated that on June 8, 1993, this supervisory official was awarded a five day suspension for departing the facility while in possession of certain keys.

Also, the EEOC found that another supervisory, nonprotesting male who was once dismissed for rule violations and who had "numerous" prior disciplinary actions against him, was only granted three (3) oral reprimands and a letter of reprimand for failure to adequately exchange information with supervisors and failing to obey instructions on at least two occasions. The EEOC conclud-

---

4. The court basis its opinion on Act/Punishment chart used by the DOC to determine Plaintiff's punishment.

ed that, based on the disciplinary guidelines to which Millender was subjected, Millender's punishment for her "involvement" in the incident should have ranged from a written reprimand up to a five day suspension for the first offense, a written reprimand to a ten (10) day suspension for the second offense, and dismissal for the final offense.

The EEOC also noted that a male correctional officer received an oral reprimand for failing to follow the instructions of a superior. The EEOC stated that the officer should have been awarded a reprimand through a ten day suspension. According to the EEOC, this officer failed to procure clearance to enroll in the Armed Forces Reserve, which constitutes failure to follow instructions; however, he was not suspended or dismissed. Instead, this male officer received only a letter of reprimand.

The court points out that Winston only recommended a fifteen day suspension for Hasberry, the person whom the defendants claim removed the keys from the facility. Hasberry's conduct forms the basis for Winston's recommendation of suspension and demotion for Plaintiff. The EEOC's finding that Hasberry has received twice as many disciplinary sanctions as Plaintiff compels the conclusion that Plaintiff has demonstrated a prima facie case of gender-based discrimination.

The court finds that the EEOC's findings and conclusions are persuasive. Therefore, the court finds that Millender has demonstrated a prima facie case of discrimination. The court is aware of the DOC's policy and notes that under normal and evenhanded circumstances, Millender's punishment would be justified. The court stresses that preferential treatment in the allocation of rewards, be they positive or negative, will almost always present a jury question as to the true motivation of the donor.

### B. Retaliatory Discharge

Title VII prohibits discharges which are retaliatory responses to an employee engaging in protected activity. Pursuant to 42 U.S.C. § 2000e–3(a) it is an unlawful employment practice for "an employer to discriminate against any of his employees.... be-cause.... he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The *McDonnell Douglas* burden-shifting analysis applies in retaliatory discharge actions as well. *See Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993); *Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992). To establish a prima facie case of retaliatory discharge, a plaintiff-employee must demonstrate by a preponderance of the evidence that (1) she engaged in a statutorily protected expression; (2) she was disadvantaged by an action simultaneously with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment decision. *See Hairston,* 9 F.3d at 919 (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993)); *Morgan v. City of Jasper,* 959 F.2d at 1547 (citing *Whatley v. M.A.R.T.A.,* 632 F.2d 1325, 1328 (5th Cir. 1980)).

Defendants do not set forth with particular clarity how Plaintiff has failed to meet her burden on her retaliatory discharge claim. In fact, it is not clear to the court if Defendants actually challenge Plaintiff's retaliatory discharge claim. Therefore, the court finds that a jury should determine whether Plaintiff's retaliatory discharge claim is meritorious.

### Conclusion

While the court is not bound by the findings of the EEOC, the court finds the EEOC's determination particularly persuasive in this instance. In light thereof, the court finds that prima facie cases of gender-based discrimination and retaliatory discharge exist and it is only appropriate for a jury to determine the facts of this action. Accordingly, it is

CONSIDERED and ORDERED that Defendants' Motion for Summary Judgment be and the same is hereby DENIED.