Daisy Alice Irvine KNIGHT, et al., Plaintiffs-Appellees Cross-Appellants,

v.

CITY OF BOGALUSA, et al., Defendants-Appellants Cross-Appellees.

No. 81–3060.

United States Court of Appeals, Fifth Circuit.

April 19, 1982.

John N. Gallaspy, Sondra A. Cheek, Bogalusa, La., for defendants-appellants.

Jacques F. Bezou, New Orleans, La., for plaintiffs-appellees.

Before BROWN, COLEMAN and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge:

The female employee plaintiff-appellees brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C., Section 2000e *et seq.*, charging impermissible sex discrimination in the abolition of their jobs as radio operators and as a parking meter maid with the Bogalusa, Louisiana, police department, their duties being assigned to officers of the police department who, however, continued to work the same number of hours as before. The District Court approved the decision of the magistrate in favor of the plaintiffs. Defendants have appealed.

The record reflects that neither the magistrate nor the District Court considered this case in the light of standards enunciated by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Indeed, *Burdine* had not been decided when this case was heard. Consequently, we vacate the judgment of the District Court and remand for further proceedings, in which *Burdine* standards may be explicitly applied.

Daisy Knight, Frances Moody, and Hazel Burkette were employed, respectively, on

March 15, 1973,[1] February 15, 1973, and April 1, 1974, as radio operators. Annette Ewell was employed as a parking meter officer for the police department on March 1, 1974. There is no dispute about the quality of their work. On June 16, 1976, assertedly because of budgetary problems, the city safety commissioner terminated the plaintiffs. Seven months later, when the police department received federal funds under the Anti-Recession Fiscal Aid Program, they were reinstated in their respective positions.

Plaintiffs claim that the discrimination against them was twofold: first, they were victims of the personal prejudices of defendant Jarrell, commissioner of public safety; second, denial of their civil service classification made them more vulnerable to budgetary layoffs than male employees. The magistrate, in extremely sparse findings of fact, found that Jarrell was aware at the time he terminated the plaintiffs that they were actively seeking civil service classification, which would have reduced the likelihood of their discharge. There was testimony that along with the plaintiffs, Otis Carter,[2] and Lorraine Latino, the union vice president, met with Jarrell on June 15, 1976, at which time he told the plaintiffs that he would probably lay them off on July 1, 1976. A discrepancy in the testimony exists as to whether Jarrell stated in this meeting that he preferred all radio operators to be "male desk sergeants," or simply preferred to have desk sergeants working as radio operators. However, there were no female desk sergeants in the department at that time. Jarrell testified that he decided to terminate the plaintiffs late on the day of June 15, 1976, rather than waiting until July 1, because it was the end of a pay period. Plaintiffs point out that Jarrell knew they had an attorney

and knew they were trying to get immediate certification with the civil service commission.[3]

I. The Finding of Discrimination

■ The law is well settled that complainants in Title VII cases carry the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). In the present case, we agree with the District Court that the four employees did present a prima facie case of discrimination. That is, the plaintiffs' jobs were terminated and their duties were assumed by male police officers who, though their total pay did not increase, were paid at a higher rate of salary.

The problem in this case arises from the fact that once the plaintiffs had made out their prima facie case, both the magistrate and the District Court applied the Fifth Circuit's pre-*Burdine* standard of proof for defendants in such a situation. Namely, the decisions below required the defendants *to prove by a preponderance of the evidence* that the complained of actions were taken for legitimate, nondiscriminatory reasons.[4]

■ It was precisely this standard which was rejected by the Supreme Court in *Burdine*. The law now is that once a prima facie case has been presented, the evidentiary burden which shifts to the defendant is only to *articulate* some legitimate, nondiscriminatory reason for the plaintiff's discharge. *Burdine, supra*, 450 U.S. at 253–57, 101 S.Ct. at 1093–95, 67 L.Ed.2d at 215–17, citing *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine, supra*, 450

1. The magistrate's findings of fact failed to note this date.

2. Carter was an electrician selected by Jarrell to be dismissed. Subsequently, an electrician was transferred to another city department and it was not necessary to suspend Carter.

3. Before their reinstatement, the plaintiffs were certified through the civil service court as of one year from the date when they were hired.

4. The magistrate and District Court relied on the pre-*Burdine* cases of *Whiting v. Jackson State University*, 616 F.2d 116 (5th Cir. 1980) and *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979).

U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. If the defendant carries this burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted. *Id.*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. The plaintiff must then demonstrate that the defendant's stated reasons for the action were nothing more than pretextual. *Id.*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217, citing *McDonnell Douglas, supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26, 36 L.Ed.2d at 678–79.[5]

The magistrate's findings of fact are so starkly sparse as to forestall any meaningful decision here. For example, he made no findings concerning the financial or budgetary plight, if any, of the City of Bogalusa.[6] Such a finding was imperative in light of the fact that Bogalusa's main defense at trial was that budgetary problems necessitated the termination of a number of positions within the police department. Nor did the magistrate address the even more important question whether, *given* the existence of such problems, the defendants' decision to terminate the plaintiffs, rather than a "budgetarily equivalent" number of male officers (say, three police officers instead of the four plaintiffs) was based on legitimate reasons. We do not mean to suggest that such reasons did not or could

not exist,[7] but only that the decisions below ignored this crucial issue.

We conclude that we have no alternative but to remand this case for complete, adequate findings, to be reached in compliance with *Burdine* standards. If this necessitates further hearings, as we think it will, then they should be held and the parties should be allowed to compile a complete, meaningful record, to be followed with findings to match, which can with confidence be reviewed on appeal if there is one.

## II. Credit for Unemployment Compensation Benefits

Citing *Abron v. Black & Decker Manufacturing Company,* 439 F.Supp. 1095 (D.Md.1977), *modified on other grounds,* 654 F.2d 951 (4th Cir. 1981), the magistrate concluded that the unemployment compensation collected by the plaintiffs during their layoff should not be construed as interim earnings to be applied against their back pay.

42 U.S.C., Section 2000e–5(g) provides: Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

The Fifth Circuit has considered this question in *Merriweather v. Hercules, Incorporated,* 631 F.2d 1161 (5th Cir. 1980)

5. *See, Meyer v. Brown & Root Construction Company,* 661 F.2d 369, 372 (5th Cir. 1981); *United States E. E. O. C. v. T. I. M. E.–D. C. Freight,* 659 F.2d 690, 694 (5th Cir. 1981); *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 580 (5th Cir. 1981); *Welch v. University of Texas and its Marine Science Institute,* 659 F.2d 531, 534 (5th Cir. 1981); *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1136 (5th Cir. 1981); *Jackson v. City of Killeen,* 654 F.2d 1181, 1183, 1184 (5th Cir. 1981); *Gupta v. East Texas State University,* 654 F.2d 411, 414 (5th Cir. 1981); *Wright v. Southwest Bank,* 648 F.2d 266, 267 (5th Cir. 1981); *Baldwin v. Birmingham Board of Education,* 648 F.2d 950, 956 (5th Cir. 1981); *Brown v. A. J. Gerrard Manufacturing Company,* 643 F.2d 273, 276 (5th Cir. 1981).

6. The magistrate did hold that "the defendant's argument that plaintiffs were terminated due to economic and budgetary difficulties then extant in the department was unpersuasive inasmuch as each woman was replaced by a man earning

a higher salary." In addition to being somewhat besides the point, *see* text and note at note 7 *infra,* this statement was obviously based upon the now-invalid Fifth Circuit pre-*Burdine* standard of proof for defendants in Title VII cases.

7. For example, the commissioner might have thought it wiser to keep police officers on the payroll rather than the plaintiffs, even though either way someone had to operate the radios, to insure that a sufficient number of police officers could be called upon in case of a major emergency. That is, although police officers could operate the radios (though perhaps not so expertly as the plaintiffs), the plaintiffs were not trained to perform the duties of uniformed police officers. We also note that the commissioner testified that when possible, a less than totally healthful police officer was put on the radio, and sometimes, a sergeant or a captain, the chief of police, or even the commissioner himself performed this duty.

and in *Marshall v. Goodyear Tire & Rubber Company*, 554 F.2d 730 (5th Cir. 1977). Some courts have ordered a deduction for unemployment benefits without explanation. *See, e.g., Satty v. Nashville Gas Company*, 522 F.2d 850, 855 (6th Cir. 1975), *affirmed in part and vacated in part*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *Ostapowicz v. Johnson Bronze Company*, 541 F.2d 394, 401 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

Any decision at this time on this question would be premature. We do not know what the outcome of this case on the merits may be when it shall have been heard agreeably to *Burdine* standards. Therefore, we express no opinion about it at this time.

Upon remand, after such further hearings as may be necessary, if any, the trier of fact will determine (1) whether the asserted budgetary problems of the City of Bogalusa actually existed (and why or why not), (2) if so, whether the defendants have articulated any legitimate, nondiscriminatory reasons for terminating plaintiffs' positions rather than effecting the necessary cutbacks in other ways, (3) whether, under *Burdine*, these plaintiffs are entitled to prevail on the merits, and (4) such other issues, if any, as should be decided incidental thereto.

VACATED and REMANDED.