Daisy Alice Irvine KNIGHT, et al.,
Plaintiffs-Appellants,

v.

The CITY OF BOGALUSA, LOUISIANA, et al., Defendants-Appellees.

No. 83–3155
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1983.

Jacques F. Bezou, New Orleans, La., for plaintiffs-appellants.

Sondra A. Cheek, Bogalusa, La., for City of Bogalusa.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Invoking Title VII, 42 U.S.C. § 2000e *et seq.*, plaintiffs claimed discrimination in their termination as employees of the Department of Public Safety of the City of Bogalusa, Louisiana. The district court initially rendered judgment for plaintiffs, but we reversed and remanded, 673 F.2d 759 (5th Cir.1982), directing the magistrate and district court to reconsider the facts in light of the intervening decision in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). On remand the district court found for the defendants. Perceiving no error of law or clearly erroneous finding of fact, we affirm.

*Facts*

In 1973, Daisy Knight, Francis Moody and Hazel Burkette were employed as radio operators for the Bogalusa police department. In 1974, Annette Ewell was employed as a parking meter maid. During the next three years seven male officers were hired by the department. Police officers are paid more than radio operators and meter maids.

Persistent financial worries worsened for the city in 1976, particularly in the Department of Public Safety, which was responsible for the police, fire and electrical departments. The Department of Public Safety, which allocated approximately 85% of its budget to salaries, was particularly hard hit by a retroactive salary adjustment for city workers resulting from a new bargaining agreement. Carl W. Jarrell, Commissioner of Public Safety, was faced with serious financial problems which mandated a reduction of salary expenditures.

Jarrell's response included the termination of radio operators and the meter maid and the absorption of their duties by regular police officers as well as by him and the police chief. Jarrell also terminated several school crossing guards of both sexes and a male electrical inspector who was hired by another department.

It is undisputed that seven male officers hired after plaintiffs were not discharged, nor is it disputed that they received higher compensation. In February 1977, the police department received funds under the federal Anti-Recession Fiscal Aid Program and

plaintiffs were reinstated at their previous salaries. Plaintiffs contend that their discharges were sexually motivated and in violation of Title VII.

Plaintiffs have established a *prima facie* case of sex discrimination, a fact found by the district court and recognized by us on the first appeal. The sole question is whether defendants articulated legitimate, nondiscriminatory business reasons for the lay-off of plaintiffs. *The Department of Community Affairs v. Burdine.* The magistrate found that the budgetary problems within the Department of Public Safety necessitated salary reductions and that Commissioner Jarrell legitimately concluded that by eliminating some employees, including plaintiffs, he could minimize the loss and risk to the city. The magistrate, and district court, found that plaintiffs failed to show that the city's articulated reasons were pretextual.

### Analysis

■ The district court's findings of fact on the issue of discrimination are subject to the clearly erroneous standard of Fed.R. Civ.P. 52(a). *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). We will not disturb the district court's findings unless after review of the record we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ We need hardly remind that the plaintiff always bears the burden of proof in a Title VII case. After a *prima facie* case is established, as was done here, the defendants are permitted an opportunity to explain and justify their actions. If defendants set forth legitimate business reasons for their decisions the *prima facie* case stands rebutted unless plaintiffs establish that the reasons articulated were mere shams or pretexts to shield discrimination. Plaintiffs "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that

the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ We find sufficient evidence to support the district court's finding that unavoidable economic difficulties motivated defendants' actions. Commissioner Jarrell's decisions concerning his salary-heavy department were reasonable. The patrol officers could assume the duties of the radio operators, as could the chief and himself, as well as the ticketing duties of the meter maid. The reverse was not true. The radio operators and meter maids were not trained police officers and could not reasonably be expected to respond adequately to a police emergency. The suggestion that some fire fighters could have been discharged was countered by testimony that reductions in the number of fire fighters would impose unacceptable risks on the city. The argument that patrol officers should have been released was countered by testimony indicating an increased need for their services, occasioned in part by an increase in burglaries and in disturbances on school campuses. Jarrell's actions were reasonable.

The findings by the district court are supported by the record. Its judgment is AFFIRMED.