Wayne SMALLEY, Plaintiff-Appellant,

v.

EATONVILLE, CITY OF, a public entity and Nathaniel Vereen, Defendants-Appellees.

No. 79–2962.

United States Court of Appeals, Fifth Circuit. Unit B

March 27, 1981.

---

Pilacek, Swindle & Egan, Joseph Egan, Jr., Orlando, Fla., for plaintiff-appellant.

Paul C. Perkins, Sr., Orlando, Fla., for City of Eatonville.

Michael R. Walsh, Orlando, Fla., for Nathaniel Vereen.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge and MARKEY *, Chief Judge.

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

2. Brief of appellees, p. 3.

GODBOLD, Chief Judge:

The appellant Smalley filed this suit against a town and its mayor asserting that his discharge as a municipal employee violated his rights under the First Amendment and was made for racially discriminatory reasons, and was a retaliatory discharge under 42 U.S.C. § 2000e–3(a).[1]

The town is Eatonville, a small Florida municipality that claims to be "the oldest and only all black community in the United States."[2] Because its tax base is modest Eatonville depends heavily on federal grants. Defendant Vereen was, and is, mayor of Eatonville, and is black. Eatonville hired Smalley, who is white, as its Finance Director in May 1975 through the federal Comprehensive Employment and Training Act (CETA) program. It fired Smalley in May 1976.

Smalley's duties included training a bookkeeper, bringing the town's books up to date, providing a cash flow statement, and preparing the budget.

In firing Smalley the defendants considered several problems. After the town hired Smalley he was convicted of forgery in another state. Because of this the town believed it could not obtain the fidelity bond required by federal grants. The town also considered Mayor Vereen's opinion that Smalley's work on an important project to reassess property taxes had been inadequate and "grossly insubordinate." Finally, the town considered a letter that Smalley had written to a CETA officer complaining of "intolerable conditions caused by racial bias existing at Eatonville" and insinuating that the Mayor might manufacture evidence of misconduct to justify firing him.

### The bonding problem

In June 1975, to comply with conditions of federal grants, the town obtained a blan-

ket fidelity bond to cover all positions. In October 1975 Mayor Vereen learned that Smalley had been charged in Indiana with forgery, a felony. At Smalley's request the Mayor wrote the presiding judge urging leniency. Smalley pleaded guilty and was sentenced to a probationary period during which he would make payments in restitution. Mayor Vereen subsequently learned that Smalley's felony conviction jeopardized the town's fidelity bond. In early March 1976 Eatonville's accountant informed the Mayor that the Florida Insurance Commission had advised him that a convicted felon could not be bonded.

### The reassessment problem

In 1973 the town sold bonds to finance a water and sewer system. The federal government also contributed to this project. Through clerical error the town inadvertently overassessed Eatonville's improved property beyond the amount authorized by the bond resolution. In the fall of 1975, Eatonville's certified public accountant informed Mayor Vereen of the seriousness of the overassessment. The Mayor believed that the overassessment could block the town's efforts to obtain further federal funding.

Mayor Vereen directed Smalley to perform the reassessment. In April the Mayor requested a progress report. Smalley's response outlined the necessary mathematical computation but complained that Smalley had too much other work to compute the reassessment, suggested that he would not complete the project without additional compensation, and questioned the Mayor's authority to authorize the task. The Mayor deemed this response inadequate and grossly insubordinate. The district court found the Mayor's interpretation of Smalley's report reasonable and sincere.

### Smalley's letter of complaint

In November 1975 the Orange County Department of Community Affairs, assist-

ing the administrators of the CETA program that paid Smalley's salary, conducted a routine investigation of Eatonville's employment practices. The Department's monitoring report, dated December 15, 1975, reprinted comments that Smalley had made alleging racial bias:

> The one white CETA participant presently employed has been in constant conflict with the Mayor because he feels that the Mayor is highly discriminatory in his hiring practices.

The Department addressed this report to Eatonville's Town Council.

When Smalley learned that his comments had been printed he wrote to Ella Gilmore, an executive of the Orange County Department of Community Affairs, protesting that the Department had violated its assurances of confidentiality. Smalley's letter continued:

> I do not believe the Mayor would terminate me without substantial evidence *manufactured or otherwise* obtained showing misconduct on my part; however, since the release of this report, the Mayor has increased the pressures tremendously for me to resign from my present position. [emphasis added.]

> . . . . .

> I would like to request that a priority be established to transfer me from Eatonville to a comparable position within CETA. I make this request because of the intolerable conditions caused by racial bias existing at Eatonville.[3]

Mayor Vereen received a copy of Smalley's letter to Gilmore several days before firing Smalley.

### The dismissal

The Mayor "suspended" Smalley on May 10, 1976 by a letter citing the bonding problem and Smalley's "gross insubordination" in connection with the reassessment report. The letter also remarked that "[s]ince you have expressed 'intolerable conditions'

---

**3.** The district court observed that "[u]p to the time he wrote this letter, according to the plaintiff's trial testimony, he had received no com-

plaints from the Mayor. The letter to Ms. Gilmore, thus undoubtedly exaggerated the conditions of employment at Eatonville."

working in Eatonville and have requested a transfer, I feel it is difficult for you to continue working in the best interest of the Town."

The Mayor reiterated each of these reasons at the Town Council meeting that reviewed the suspension. He described the bonding problem, mentioned the inadequate progress report, and read to the Council Smalley's letter to Gilmore. The Council voted to uphold the dismissal.

### The district court decision

After receiving a right-to-sue letter from the EEOC, Smalley filed this suit. The district court found that Smalley's claim of racially discriminatory treatment was without merit, that there had been no First Amendment violation and no retaliatory discharge.

The court found no First Amendment violation because the town would have fired Smalley even had it not considered his letter to Gilmore, see Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). As an alternate ground the court decided that the town's legitimate interest in efficient operation justified the firing, see Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[4] The court did not squarely address Smalley's claim that 42 U.S.C. § 2000e–3(a) protected him from discharge for writing the letter to Gilmore. We discuss this claim following our treatment of the First Amendment.

### The First Amendment

 Smalley's First Amendment claim must be tested against Pickering, supra. Pickering decided that a government employee's interest in free expression on matters of public concern must be balanced with the government's interest as an employer in promoting the efficiency of the public services it performs through its employees. We conclude that the First Amendment does not insulate Smalley from dismissal.

The Supreme Court has recognized that a government employer has a particular interest in preserving the effectiveness of close working relationships between superiors and their subordinates that require personal loyalty and confidence. See Pickering, 391 U.S. at 569–70 & n.3, 88 S.Ct. at 1735 & n.3, 20 L.Ed.2d at .818 & n.3 (noting that such cases involve significantly different factors than cases in which the employee criticizes ˙one with whom he need not work closely); Givhan v. Western Line Consolidated School District, 439 U.S. 410, 414 n.3, 99 S.Ct. 693, 696, 58 L.Ed.2d 619, 624 n.3 (1979). This interest is an important weight in the Pickering balance. See Abbott v. Thetford, 534 F.2d 1101 (5th Cir. 1976) (en banc) (adopting the dissenting panel opinion of Judge Gewin, 529 F.2d 695, 707–08, which notes the "fundamental requirement of cooperation and confidence" between a judge and his chief probation officer), cert. denied, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); Sprague v. Fitzpatrick, 546 F.2d 560, 564–65 (3d Cir. 1976), cert. denied, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); Kannisto v. City and County of San Francisco, 541 F.2d 841, 844 (9th Cir. 1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977).

As chief executive officer of Eatonville, Mayor Vereen was Smalley's direct superior. As Finance Director, Smalley had a key role in such important town projects as the reassessment and the budget. Indeed, Smalley's office at Town Hall adjoined the Mayor's office.

Smalley's letter not only alleged "intolerable conditions of racial bias" but insinuated that the Mayor might "manufacture" evidence to justify dismissal. Smalley's letter thus threatened serious disruption of a working relationship requiring cooperation and loyalty. In these circumstances dis-

---

4. The district court cited the portion of the Mt. Healthy opinion that discusses Pickering, and two court of appeals decisions applying Pickering.

missing Smalley did not offend the constitution.[5]

We therefore uphold the district court's decision on *Pickering* grounds. Thus, we do not address the district court's alternate holding based on *Mt. Healthy.*

### Section 2000e–3(a)

 We also affirm denial of relief on Smalley's retaliatory discharge claim under § 2000e–3(a). We assume for purposes of discussion that the letter to Gilmore was protected "opposition" to unlawful employment practices under this statute.[6] We need not elaborate this issue because Smalley failed to prove a sufficient causal connection between his "opposition" and his dismissal.

To establish a prima facie case under § 2000e–3(a) the plaintiff must establish (1) statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *See Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir. 1980). A causal link is suggested by Smalley's direct evidence that the Mayor and Town Council considered his letter to Gilmore. But the City rebutted this showing with evidence of other reasons for discharge.

We cannot say that the letter did not play any part in the decision. But a dismissal based on numerous factors does not violate Title VII merely because an improper consideration played some part in the decision. *Whiting v. Jackson State University,* 616 F.2d 116, 121 (5th Cir. 1980). The other reasons for firing Smalley—the inability to bond a convicted felon as Finance Director and the insubordinate character of Smalley's inadequate progress report—were clearly not a ruse or pretext. We assess the controversy over bonding a felon, the inadequate report, the insinuation that the Mayor might manufacture evidence, and the

complaint of racial bias in light of the legal requirement that the plaintiff carry the ultimate burden of proving that he was fired because of his opposition to unlawful employment practices. *See Whiting,* 616 F.2d at 121, citing *Jepsen v. Florida Board of Regents,* 610 F.2d 1379, 1382 (5th Cir. 1980). We conclude that the defendants effectively rebutted Smalley's prima facie case.

AFFIRMED.

---

5. Of course, a superior's firing of a subordinate is not always immune to First Amendment challenge. *Cf. Swilley v. Alexander,* 629 F.2d 1018 (5th Cir. 1980); *Williams v. Board of*

*Regents,* 629 F.2d 993 (5th Cir. 1980). This case rests on its own facts.

6. *See Sias v. City Demonstration Agency,* 588 F.2d 692 (9th Cir. 1978).