Willeva LINDSEY, et al.,
Plaintiffs-Appellants,

v.

MISSISSIPPI RESEARCH AND DEVELOPMENT CENTER, et al., Defendants-Appellees.

No. 80–3903
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 3, 1981.

---

Nausead Stewart, Frank R. Parker, Jackson, Miss., for plaintiffs-appellants.

Jolly, Miller & Milam, Judith J. Johnson, Paul O. Miller, Jackson, Miss., for Miss. Research.

Hubbard T. Saunders, IV, Asst. Atty. Gen., Jackson, Miss., for other defendants.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Plaintiff, Willeva Lindsey, appeals trial court's denial of her requests for class action declaratory and injunctive relief against defendant Mississippi Research and Development Center (Center) in discrimination suit filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the First, Fifth, and Fourteenth Amendments to the Constitution, and 42 U.S.C. § 1983. She alleges trial court erred in ruling (i) a prima facie case of discrimination was not established, (ii) the Center proved she was dismissed for legitimate nondiscriminatory reasons, (iii) the Center's articulated reason for her dismissal was not a mere pretext, (iv) not a scintilla of evidence was introduced to support her First Amendment claims, and (v) certain exhibits were inadmissible. Finding her contentions lack merit, we affirm.

I.

The Center is an agency of the state of Mississippi placed administratively under the Board of Trustees of the Institutions of Higher Learning. Its function is to expand and accelerate the economic development of Mississippi by providing a wide range of management and technical assistance to any person or entity who could contribute to such development.

Lindsey, a black female, applied for employment with the Center on August 8, 1975. At that time, the Center was limited in its selection procedures by State Classification Commission requirements, legislative limits, and budgetary constraints. Each employee hired had to be certified to the Classification Commission as meeting minimum qualifications for a particular job. The only job available for which Lindsey met the minimum qualifications was that of research assistant, for which she was overqualified. She initially was advised of this fact, but that her application would remain on file.

The Center has, however, a fund for contractual services which it uses to accomplish short term objectives, such as hiring professional consultants for projects requiring special expertise. People hired on contract were compensated more than employees with similar qualifications. Although contract employees did not receive fringe benefits, they were given a fifteen percent bonus. Lindsey subsequently was interviewed and hired under this system.

Lindsey understood she was employed in the Center's newly established Office of Black Employment Development (OBED). Memoranda of the Center indicates, however, she was hired to provide black economic development services in the Economic Analysis Division. Her project assignments included preparing (i) a report on the social and economic profile of Blacks in Mississippi, (ii) a study of the economics of welfare, and (iii) a black business directory.

Shortly after commencing employment, confusion arose as to whom Lindsey was to report to and how authority for making assignments was to be divided between the Economic Analysis Division and OBED. This prompted various meetings among Center personnel and various memoranda from the persons involved. Supervisors issued a mid-November 1975 memoranda setting forth the priorities of Lindsey's work assignments as (i) the Economic Analysis Division's Social and Economic Profile of Black Mississippians, (ii) the Economic Analysis Division's Economics of Welfare Project, and (iii) OBED's Black Business Directory.

Lindsey was to submit a rough draft of the Social and Economic Profile by the end of November 1975. She failed to submit the rough draft of the profile on time, however. The deadline was extended several times, culminating in a directive that completed portions of the draft be submitted by December 16, 1975. Lindsey complied. Center supervisory personnel found the rough draft unsatisfactory, however, instructing Lindsey as to those modifications necessary to obtain approval.

Lindsey submitted a revised rough draft in January 1976. Following an adverse critique of her work by both her immediate supervisor and other Center supervisory personnel, Lindsey's employment was terminated January 14, 1976. Her position was never filled due to budgetary cutbacks.

After exhausting all administrative remedies,[1] Lindsey filed this action pursuant to Title VII of the Civil Rights Act of 1964 as amended. Pursuant to the written consent of all parties, an order of reference by District Court, and the provisions of 28 U.S.C. § 636, this case was tried before a Magistrate without a jury. Relying on *Marks v. Prattco*, 607 F.2d 1153, 1155 (5th Cir. 1979), the Magistrate found Lindsey failed to make out a prima facie case of discrimination in that she failed to show her position was filled by a nonminority. Assuming discrimination arguendo, the Magistrate concluded the Center nevertheless met its burden of proving by a preponderance of the evidence Lindsey was discharged for a legitimate nondiscriminatory reason, *i. e.*, her poor work performance. Nor was the Magistrate able to conclude Lindsey met her burden of proving this articulated reason was a mere pretext for discrimination. Further, as to the First Amendment violations, the Magistrate could not find a scintilla of evidence the decision to terminate was motivated by any reason other than Lindsey's unacceptable work. No evidence of any disparate treatment in regard to terms and conditions of employment, job classification, job assignments, and transfers, either on the part of herself or other blacks was found. On the contrary, the Magistrate found the Center showed affirmative efforts to recruit blacks from within Mississippi and without, and to give preference to blacks, all other factors being equal, in hiring potential applicants for any position.

## II.

About the first week of December 1975, black members of the Center's staff began to hold meetings to discuss, among other things, some of the Center's alleged racially discriminatory employment practices. Lindsey claims because of her participation and leadership in this activity, she was terminated.

■■■ In a Title VII race discrimination case involving discharge of an employee, plaintiff has the burden of establishing a prima facie case of discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In making an assessment of the existence of a prima facie case, the Magistrate applied the standards of *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979), which provide a plaintiff must show (i) she is a member of a protected minority, (ii) she was qualified for the job from which she was discharged, (iii) she was discharged, and (iv) after her discharge, the position she held was filled by a member of a nonminority. *Id.* at 1155. Although both parties on appeal argue the merits of the case based on an application of this standard, we find Lindsey's assertions are better characterized as those of a retaliatory discharge. Under such § 2000e–3(a) contentions, she must establish (i) statutorily protected expression, (ii) an adverse employment action, and (iii) a causal link between the protected expression and the adverse claim. *Smalley v. City of Eatonville*,

1. Lindsey received a "Right to Sue Letter" from the United States Department of Justice on July 28, 1977.

640 F.2d 765, 769 (5th Cir. 1981); *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325, 1328 (5th Cir. 1980). Once a prima facie case is established, defendant must articulate "some legitimate nondiscriminatory reason for the employee's rejection." *Id.* 450 U.S. at 249, 101 S.Ct. at 1092, 67 L.Ed.2d at 213. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. Defendant satisfies this burden by "explaining clearly the nondiscriminatory reasons for its actions." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218. It then becomes plaintiff's duty to prove these legitimate reasons offered by the employer were merely a pretext for discrimination. *Id.* at 249–253, 101 S.Ct. at 1092–94, 67 L.Ed.2d at 213–216. District Court's determinations regarding discrimination vel non are ultimate facts subject to plenary review. *See Robbins v. White-Wilson Medical Clinic, Inc.*, 642 F.2d 153, 154–55 (5th Cir. 1981); *Thompson v. Leland Police Dept.*, 633 F.2d 1111, 1112 (5th Cir. 1980).

■ Applying these standards to the record, we find no discrimination in Lindsey's dismissal. As the record shows, Lindsey failed without explanation or warning to meet a project deadline. It was only after she initially failed to properly perform her duties that she engaged in protected expressions, *i. e.*, the organization of black employees at the Center. Lindsey justifiably could have been dismissed prior to any participation in organizing the Center's black employees. The Center articulated a legitimate reason for dismissing Lindsey, *i. e.*, her failure satisfactorily to complete the economic analysis. In light of such evidence, we must conclude Lindsey failed to establish (i) a prima facie case by showing a causal link between the protected expression and the adverse action, and (ii) that the Center's articulated reason for dismissal was merely a pretext for discrimination.

■ With respect to the alleged violation of First Amendment claims, each case must rest on its own facts. *Smalley*, 640 F.2d at 768. To prove a prima facie case of discharge violating Lindsey's First Amendment rights, she had to show her constitutionally protected speech was a substantial or motivating factor in the Center's decision to discharge her. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1979); *Garza v. Rodriguez*, 559 F.2d 259, 260 (5th Cir. 1977); *Megill v. Board of Regents*, 541 F.2d 1073 (5th Cir. 1976).

■ Balancing Lindsey's interests in free expression against those of the Center, *see Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), we conclude the First Amendment does not insulate Lindsey from dismissal. We agree with the Magistrate that not a scintilla of evidence was introduced showing the unanimous decision to terminate Lindsey's employment was motivated by any reason other than her unacceptable work. Moreover, the Center proved by a preponderance of evidence Lindsey would have been discharged "even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484.

■ Lindsey's final contention is the Magistrate erred in refusing to admit certain exhibits into evidence. The admission of evidence is within trial court's broad discretion. Finding no abuse, we will not interfere.

Judgment of trial court is affirmed.

AFFIRMED.