William A. ABERNATHY, Plaintiff,

v.

WALGREEN CO., Richard Reddick, and Tom Militello, Defendants.

No. 92–693–CIV–T–23C.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 16, 1992.

Charles Gilbert Burr, III, Tampa, FL, for plaintiff.

Gregory Alan Hearing, William Eugene Sizemore, Thompson, Sizemore & Gonzalez, Tampa, FL, for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

MERRYDAY, District Judge.

Before the Court is a motion for preliminary injunction (Doc. 22), filed by the plaintiff, William A. Abernathy, on August 21, 1992. The defendant, Walgreen Co., filed a response (Doc. 25) on September 3, 1992. On September 24, 1992, the Court conducted a hearing on the motion, at which Abernathy testified. Abernathy seeks an order requiring Walgreen, his former employer, to reinstate him as Executive Assistant Manager, the title he held before Walgreen discharged him on April 17, 1992.[1] In his complaint, Abernathy claims that Walgreen discharged him in retaliation for his opposition to unlawful discrimination by Walgreen. Walgreen responds that it discharged Abernathy because, without authorization and in violation of a company policy, he disseminated an internal personnel record to people outside of the company.

On April 13, 1992, four days before Walgreen fired him, Abernathy wrote a letter to Belinda Hubbard, the equal employment officer at Walgreen. With the letter, Abernathy included a copy of a Walgreen internal personnel record. Abernathy simultaneously sent copies of the same letter and record to eleven other people, including six people outside of the Walgreen organization. These six people, listed at the end of Abernathy's letter, are: (1) Henry Carley, the President of the NAACP in Tampa, (2) Joanna Tokley, CEO and President of the Tampa Urban League, (3) Gayle Williams, former DET Enrollee in the City of Tampa's Department of Employment and Training, (4) Robert Saunders, a prominent civil rights advocate in Tampa, (5) Sandra Freedman, the Mayor of Tampa, and (6) Beverly Lane, the Pastor of the New Bethel AME Church, Tampa.

The letter to Hubbard expresses Abernathy's dissatisfaction with the level of discipline administered to a Walgreen employee, Tom Militello, for telling a crude "joke" while at work on March 21, 1992. Militello told the "joke" to another male employee in Abernathy's presence. No one else heard the "joke." Although Walgreen did not fire Militello for telling the "joke," he received a "final warning" that he would be fired if a similar incident occurred in the future. The "joke's" plot featured a doctor engaging in sexual intercourse with a female patient who was receiving fertility treatment. Abernathy considered the "joke" a personal affront because his wife was then undergoing fertility treatment. Abernathy had told Richard Reddick, the manager of the store where Abernathy worked, about the fertility treatment, but Abernathy had told no other Walgreen employee. Reddick, a defendant in this action, states in an affidavit that he did not tell Militello or anyone else about Mrs. Abernathy's fertility treatment. Abernathy wrote in his account of the incident that Reddick's character was irreproachable and that Abernathy believed that Reddick did not reveal Abernathy's confidences to others. Nonetheless, Abernathy inferred from the utterance of the "joke" in his presence that Reddick had betrayed him by some means. This important ambiguity is unresolvable based on the present record, but neither Abernathy's equivocation nor an inference based upon an obscene attempt at humor establishes the probability of racially motivated behavior by Reddick or Militello.

The personnel record included with Abernathy's letter is a disciplinary report written by Abernathy on forms captioned "Supervision Visit Notes." Abernathy wrote the report on the same day as the infamous "joke." The disciplinary report details the incident and refers to Militello by name. At the end of the report, Abernathy recommends that

---

**1.** Abernathy filed his motion for preliminary injunction approximately four months after Walgreen discharged him and approximately three months after he commenced this action on May 26, 1992.

"this violation of Walgreen's sexual harassment policy be enforced fully, so that the potential for more harm can be purged from the Walgreen company." Although he equivocated on this issue also, Abernathy admitted that "enforced fully" meant firing Militello, a first offender.[2]

Walgreen contends that Abernathy's discharge arises from his violation of a company policy prohibiting unauthorized dissemination of internal personnel records to people outside of the company. The policy provides, in part, that "[n]o [personnel] information will be released except through the Personnel Records Department." Abernathy claims that, company policy notwithstanding, he disseminated copies of the letter and the personnel record in an effort to oppose unlawful sex and race discrimination and, therefore, that the discharge violated Title VII of the Civil Rights Act of 1964. Abernathy contends that the letter and record express (1) his belief that Militello violated Walgreen's sexual harassment policy and that Walgreen should have disciplined Militello in a more severe manner (i.e., outright discharge) and (2) Abernathy's belief that Walgreen's failure to discharge Militello evidences a racially discriminatory decision based upon the fact that Militello is white and Abernathy is black. Abernathy concludes that Walgreen thus violated section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), which provides, in part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because

[the employee] has opposed any practice made an unlawful employment practice by this subchapter...."

■ Disposition of a motion for preliminary injunction is within the Court's sound discretion, guided by the principle that an injunction is warranted consequent upon a demonstration by the movant of (1) a substantial likelihood that the movant ultimately will prevail on the merits, (2) an irreparable injury to the movant in the absence of the requested injunction, (3) a threatened injury to the movant that outweighs the potential harm to the opposing party, and (4) the absence of an effect adverse to the public interest if the injunction issues. *See, e.g., Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd sub nom. McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Likelihood of success on the merits is ascertained consistent with *Hamm v. Board of Regents,* 708 F.2d 647, 654, 32 Fair Empl.Prac.Cas. (BNA) 441, 32 Empl. Prac.Dec. (CCH) ¶ 33715 (11th Cir.1983):

To establish a prima facie case of retaliation for participating in the process of vindicating civil rights through Title VII, a plaintiff must show (1) actions protected by the statute, (2) an adverse employment action, and (3) a causal link between the protected actions and the adverse employment decision. *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir.1980). The burden of going forward then shifts to the

**2.** Abernathy apparently asserts that Walgreen's sexual harassment policy is violated (sufficiently to warrant discharge for a first offense) by a sexually explicit "joke" told by one male employee to another male employee in the presence of a third male employee. The extent to which this assertion is true is not resolvable with finality on the present record, but Walgreen has placed into the record a copy of the sexual harassment policy, which states as follows:

It is illegal and against the policies of this Company for any employee, male or female, to sexually harass another employee by:

- making unwelcome sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature as a condition of an employee's continued employment,

- making submission to or rejections of such conduct the basis for employment decisions affecting the employee,
- creating an intimidating, hostile, or offensive working environment by such conduct.

Interestingly, the policy also states that:

Information gathered from the investigation will only be disclosed on a *need-to-know basis* to aid in the resolution. Walgreens encourages any employee to raise questions he or she may have regarding discrimination or harassment with the Employee Relations Department.

Because Abernathy obviously was familiar with the sexual harassment policy (although he denies knowledge of the records policy), he obviously was aware of the confidential and sensitive status assigned by Walgreen to records pertaining to alleged sexual harassment.

defendant to articulate some legitimate, non-discriminatory reason for the adverse decision. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–55, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Lindsey v. Mississippi Research and Development Center,* 652 F.2d 488, 492 (5th Cir.1981). "The ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 25 Fair Empl.Prac.Cas. (BNA) 113, 25 Empl. Prac.Dec. (CCH) ¶ 31544, 9 Fed.R.Evid.Serv. (Callaghan) 1 (1981).

■ In the present case, Abernathy claims that he has established a prima facie case of retaliatory discrimination under section 704(a). He asserts that he opposed sex and race discrimination by sending the letter and personnel record to persons both within and without the Walgreen organization and that this opposition was protected activity under Title VII. In an effort to establish a direct causal link between the protected activity and the adverse employment action, Abernathy further claims that Walgreen fired him because he engaged in this protected activity. Relying primarily on *Jefferies v. Harris County Community Action Assoc.,* 615 F.2d 1025, 22 Fair Empl.Prac.Cas. (BNA) 974, 22 Empl.Prac.Dec. (CCH) ¶ 30858 (5th Cir. 1980), Walgreen contends that the dissemination of the personnel record was not protected activity under Title VII.

In *Jefferies,* a black female employed by Harris County Community Action Association (HCCAA) applied for promotion to one of two vacancies within HCCAA. On the day she submitted her application, she allegedly saw a completed "personnel action" form indicating that a black male had already been hired for one of the positions. Believing that she was the victim of discrimination, Jefferies sent copies of the "personnel action" form, with other personnel materials, to Janet Walker, who was both chairperson of HCCAA's personnel committee and a member of its board of directors. After Walker expressed concern that the materials were confidential, the acting executive director of HCCAA, Mario Silva, conducted an investigation into the matter. After this investigation, Silva fired Jefferies for "conduct prejudicial to the interest of HCCAA." *Jefferies,* 615 F.2d at 1029.

Jefferies claimed that her discharge constituted retaliatory discrimination under section 704(a) of Title VII. The Fifth Circuit rejected this claim, stating that "it is clear that not all 'opposition' activity is protected under § 704(a)." *Jefferies,* 615 F.2d at 1036 (citing *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, 5 Fair Empl. Prac.Cas. (BNA) 965, 5 Empl.Prac.Dec. (CCH) ¶ 8607 (1973)). "Rather, the courts have required that the employee conduct be reasonable in light of the circumstances, and have held that 'the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare.'" *Jefferies,* 615 F.2d at 1036 (quoting *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 233, 13 Fair Empl. Prac.Cas. (BNA) 804, 12 Empl.Prac.Dec. (CCH) ¶ 11220 (1st Cir.1976)). Because "HCCAA clearly had a legitimate interest in keeping its personnel records and agency documents confidential" and "Jefferies [had] not shown any need for surreptitious copying and dissemination of the documents," the court held that "HCCAA's interest in protecting the confidentiality of its records outweigh[ed] Jefferies' right to protect her interests by opposing perceived employment discrimination." *Jefferies,* 615 F.2d at 1036–37.

In light of *Jefferies* and related authorities, the Court finds that Abernathy has not demonstrated a substantial likelihood that he ultimately will prevail on the merits of his assertion that dissemination of the personnel record was protected activity. Walgreen has a legitimate and substantial interest in keeping its personnel documents confidential. Abernathy has demonstrated neither an urgent need to disseminate the record outside the Walgreen organization nor a need that reasonably outweighed Walgreen's interest in

confidentiality.[3] By sending the personnel record to several people outside the company, Abernathy's breach of confidentiality was more egregious than the breach of confidentiality in *Jefferies*, in which the plaintiff sent the personnel record to one person within the employer's organization.[4]

To establish a prima facie case of retaliatory discrimination, Abernathy also must demonstrate "that he had a reasonable belief that the employer was engaged in unlawful employment practices." *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140, 26 Fair Empl.Prac.Cas. (BNA) 1500, 26 Empl.Prac.Dec. (CCH) ¶ 32097 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866, 28 Fair Empl. Prac.Cas. (BNA) 288, 28 Empl.Prac.Dec. (CCH) ¶ 32467 (1982). As previously stated, Abernathy contends that the letter and record constituted opposition to sex and race discrimination because they express, first, his belief that Militello violated the Walgreen sexual harassment policy and that Walgreen should have disciplined Militello in a more severe manner for that violation and, second, his belief that Walgreen did not heed his advice concerning discipline of Militello because Militello is white and Abernathy is black.

■ While the Court does not discredit Abernathy's assertion that he believed discrimination existed, the Court finds that Abernathy has not established a substantial likelihood that he will prevail on the claim that his belief was reasonable. In the letter to Ms. Hubbard and the accompanying personnel record, Abernathy complains about a single incident of one male employee, Militello, telling a crude "joke" to another male employee in the presence of a third male employee, Abernathy. No other person, male or female, heard the "joke" and, considered discretely, the "joke" did not create an atmosphere of approval for crude, sexually suggestive jokes in the work place. In the absence of other indicia of sex discrimination, Abernathy's belief that an isolated yet crude "joke," told among men only, constituted sex discrimination fails to establish a basis from which to conclude that his belief was reasonable.

■ Based upon the record available for evaluation at this time, the Court finds similarly that Abernathy has not established a probability of success in proving the reasonableness of his belief that race discrimination motivated Walgreen's failure to follow his disciplinary recommendation. Upon consideration of Abernathy's report of the "joke" incident, Walgreen disciplined Militello, issuing a final warning to Militello that if a similar incident occurred in the future, Walgreen would fire him. In light of the evidence before the Court, this level of discipline appears facially appropriate in response to an initial occurrence of this kind. (Of course, graduated disciplinary systems are common and encouraged.) In sum, Abernathy has presented neither direct evidence nor substantial circumstantial evidence sufficient to create a probability of his prevailing on the claim that race played a role in Walgreen's disciplinary decision concerning Militello.

### CONCLUSIONS

Abernathy has failed to establish a probability of success on the merits, and Walgreen has demonstrated preliminarily a non-discriminatory, non-pretextual basis for Abernathy's discharge. Abernathy's claim that the behavior of Reddick and Militello constituted sexual harassment is unsatisfactorily evidenced by the record *at this time.* Abernathy's claim that his race or Militello's race served to mitigate the discipline administered to Militello is similarly deficient and, in

---

3. In fact, at page 37 of the transcript of the hearing on his motion for preliminary injunction, Abernathy testified that it "never crossed my mind" that a manager should keep disciplinary records confidential. This perhaps insincere testimony is a paramount peculiarity from someone who claims to have taken amplified offense at the notion of anyone's revealing his personal matters.

4. At pages 31–32 of the transcript of the hearing on his motion for preliminary injunction, Abernathy reluctantly concedes that his state unemployment claim was disallowed because of a finding of "misconduct."

fact, so speculative in the present record that no further inference or supposition can justly derive from it. Abernathy's claims that he was fired because of his race and that he was fired in retaliation for protected activity are also deficient on this record. Abernathy could not have had a good faith or reasonable belief that the "joke" violated the sexual harassment policy. If he read the policy, its inapplicability was either obvious or profoundly questionable to him. If he failed to read the policy or otherwise misunderstood the coverage of the policy, he knew of his failing and any guesses by him were at his own risk. Willful ignorance and unwarranted speculation do not form the basis of a good faith or reasonable belief (however either is defined). Accordingly, Abernathy's decision to catalyze interest among parties outside the Walgreen corporate structure, to the extent evidenced by the record compiled at this time, was not "protected" under Title VII because the antecedent activities of Walgreen were not apparently offensive to Title VII and Abernathy lacked a good faith belief to the contrary. Additionally, Abernathy's selection of time and method to initiate a public campaign fails the test announced in *Jefferies* by, among other things, unduly impinging Walgreen's legitimate corporate interests and policies. In fact, at page 64 of the transcript, Mr. Sizemore provided a succinct statement of the most probable explanation for Abernathy's discharge:

> The defendant fired the plaintiff not because he wrote a letter to Belinda Hubbard and sent the letter to the mayor. They fired the plaintiff because the plaintiff attached a confidential business record called a supervision notes that he called a disciplinary report.

Based on the record as now formulated, Mr. Sizemore's formulation seems more likely to prevail, especially if the unhappy events of this case are considered carefully and with attention to exact chronology, the content of applicable policies and pertinent documents, and the possible motivations of the respective parties. (For example, without respect to whether a letter to the mayor exhibiting Militello's personnel record eventually affected Walgreen, injury and embarrassment to Militello, perhaps punitive in impact and retaliatory in intent, were virtually certain consequences to Militello.)

The questions of irreparable harm to the movant, the relative injury to the parties, and any possible injury to the public remain for resolution. However, in this case, as appraised on the present record, these three factors are pervaded negatively by Abernathy's poor chances of success on the merits. Abernathy claims (and this Court is pointedly sympathetic with the claim) that his home, his insurance, his wife's continuing fertility treatment, and his ability to provide the means of daily life are adversely and irreparably affected by his discharge. If the Court's preliminary and tentative appraisal of the merits resulted in a determination that Abernathy enjoyed a greater chance of success (*even if that chance was less than "even," i.e., less than Walgreen's chance*), these injuries to Abernathy would perhaps cause the Court to preserve the status quo. However, notwithstanding some admitted injury to Abernathy and notwithstanding the ability of Walgreen to preserve the economic status quo without severe disruption, a preliminary injunction should not issue if the probability of success by the movant gravitates unmistakably toward the lowest probability. Also, Walgreen should not suffer injunction in a case presenting a very low probability of success if its employees, to a high degree of certainty, will perceive that the confidentiality of their personnel records can be jeopardized by management with impunity.

In accordance with the above, Abernathy's motion for preliminary injunction (Doc. 22) is DENIED.

ORDERED.