Ruben I. DEL MONACO, Plaintiff,

v.

UNITED PARCEL SERVICE, d/b/a UPS, a foreign corporation, Defendant.

No. 97–3982–Civ.

United States District Court,
S.D. Florida,
Miami Division.

April 21, 1999.

**1372**

Saul Smolar, Fort Lauderdale, FL, for plaintiff.

Thomas H. Loffredo, Holland & Knight, Fort Lauderdale, FL, Dalia Mercedes Gonzalez, Holland & Knight, Miami, FL, for defendant.

### ORDER DENYING SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (DE # 45).

UPON CONSIDERATION of the motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### BACKGROUND

This matter arises out of a claim by Plaintiff Ruben I. Del Monaco against Defendant United Parcel Service ("UPS") for retaliatory discharge under Title VII of the Civil Rights Act, and the Florida Human Civil Rights Act of 1992. Plaintiff claims that his discharge was a direct result of his vehement opposition to racial discrimination against his African–American coworkers. Defendant claims that Plaintiff was discharged for violating a fundamental company rule requiring that all accidents be reported to Defendant. The following facts are undisputed for the purposes of Defendant's Motion for Summary Judgment.

Beginning in September 1980, Plaintiff was employed by Defendant as a package driver. During February 1996, Sherry Morales, a UPS driver who was at that time on probation, was involved in an accident while backing into a condominium building to make a delivery. The accident resulted in damage to a driveway sidewall.

That weekend, Plaintiff assisted Michael Howard, another UPS driver, in repairing the sidewall to the satisfaction of the building's condominium association president. Morales had not reported the accident to UPS, which was arguably a violation of company policy. Defendant claims that Plaintiff advised Morales not to report to accident, and Plaintiff denies this claim.

In April 1996, Plaintiff and Morales began dating. This relationship lasted approximately four months.

On September 25, 1996, Plaintiff told Andrew Sanguinetti, his supervisor, that Morales had been involved in an accident. On September 26, 1996, Sanguinetti informed Orlando Torres, Sanguinetti's supervisor, of his conversation with Plaintiff. Torres then spoke with Plaintiff about the accident, and about Plaintiff's involvement. At that time, Torres informed Plaintiff that Torres was going to investigate Plaintiff's participation in the alleged incident.

Plaintiff claims that during this conversation, Torres stated that he was obliged "to pursue the 'accident' investigation against Del Monaco, because the 'chardo' [1]

---

1. Chardo is a Cuban slang for "nigger." *See* *Plaintiff's Memo. of Law* at 5.

(referring to UPS employee James Vamper) had 'pushed his hand.'" *See Plaintiff's Response and Memorandum of Law in Opposition to Defendant UPS's Motion for Summary Judgment* at 5.

Plaintiff claims that on the same day that Torres used the discriminatory comment, Plaintiff told Torres not to use that term. Plaintiff also claims that he complained to James Vamper, who was the subject of the remark, and UPS Supervisor Andrew Sanguinetti.

On September 27, 1996, Plaintiff alleges that he reported Torres's alleged remark to Union Representative Josh Zivalich. That same day, Plaintiff was taken out of service, pending an investigation for charges of sexual harassment brought by Morales. In addition, UPS also sent a letter to Plaintiff, informing Plaintiff that he was being investigated for advising an employee not to report an accident.

Not long after the sexual harassment investigation began, a meeting was convened by Torres. The meeting was attended by Torres, Plaintiff, James Vamper—an African–American UPS employee and union shop steward, and another union shop steward.

At the meeting, Torres informed all in attendance that the claim of sexual harassment was without merit, and Plaintiff would be cleared of the charge. At that time, however, Torres informed Plaintiff that he was being suspended again pending investigation of his involvement in the cover-up of Morales's accident.

Torres concluded that Plaintiff had not only been involved in repairing the driveway, but he had advised Morales not to report the accident. Torres also found that Plaintiff had asked the condominium association president not to report the accident. However, Plaintiff maintains that Morales told him on several occasions that the accident had been reported to UPS. Defendant alleges that based on the evidence that Plaintiff had assisted Morales in covering up the accident, UPS terminated Plaintiff's employment.

Plaintiff filed two official grievances relating to his termination. The first was filed on October 6, 1996, after Plaintiff was taken out of service. The second was filed on October 9, 1996, after Plaintiff was terminated by UPS. During neither of these grievances did Plaintiff allege that the actions of UPS were in retaliation for any expressions by Plaintiff, nor did he make any mention of Torres's alleged comment about James Vamper.

Plaintiff has acknowledged that failure of a driver to report an accident is punishable by termination.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most

favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Retaliatory Discharge under Title VII and the Florida Human Civil Rights Act

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (1998).

█ The burden of proof in cases of retaliatory discharge is governed by the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this ruling and the substantive law of the Eleventh Circuit, in order to establish a prima facie case of retaliatory discharge, a plaintiff must establish the following: (1) statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956 (11th Cir.1997); *Doyal v. Marsh,* 777 F.2d 1526, 1534 (11th Cir.1985); *Lindsey v. Mississippi Research and Development Center,* 652 F.2d 488, 491 (5th Cir. Aug.1981).

█ Once a plaintiff has met its burden of proving a prima facie case of retaliatory discharge, the burden then shifts to the defendant, who must rebut the presumption of retaliatory discharge by producing evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green,* 411 U.S. at 803, 93 S.Ct. 1817. After a defendant has articulated a legitimate, nondiscriminatory reason for discharging a plaintiff, the burden then shifts back to the plaintiff to assert specific facts that

discredit the defendant employer's reason for discharging the plaintiff by demonstrating that the reason was merely pretextual. *See McDonnell Douglas v. Green*, 411 U.S. at 802–04, 93 S.Ct. 1817; *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1331 (11th Cir.1998).

█ Upon a thorough review of the facts, the Court finds that Plaintiff has alleged a prima facie case of retaliatory discharge. To begin, Plaintiff has alleged facts sufficient to demonstrate that he engaged in statutorily protected expression. Specifically, Plaintiff asserts that he complained about Torres's alleged discriminatory remark to Torres, Vamper, Sanguinetti, and Zivalich. The Court also finds that Plaintiff has met the second requirement for establishing a prima facie case. Indeed, Plaintiff encountered an adverse employment action in the form of termination. Finally, Plaintiff narrowly meets the third requirement of a prima facie case by alleging that there was a causal connection between his protected expression and his termination from UPS. This allegation is based upon the short time period between Plaintiff's protected expression and Plaintiff's termination.

It must be noted that Defendant has succeeded in presenting a compelling argument against Plaintiff's claim of a causal connection. Plaintiff has claimed that a causal connection exists between his expression and his termination, based on the fact that Plaintiff was discharged a short time after Torres made his alleged discriminatory remark. However, prior to the time of the alleged remark, and prior to the protected expression of Plaintiff, Defendant had initiated an investigation into an unreported vehicular accident—an omission of action which Plaintiff has acknowledged to be worthy of termination.

According to the Plaintiff's own allegations, on September 25, 1995, Plaintiff made Sangiunetti aware of the unreported vehicular accident at issue. Sanguinetti found it appropriate to discuss the matter with Torres the following day, and Torres indicated that he would conduct an investigation into the matter. Torres then informed Plaintiff that Torres had to pursue the accident investigation against Plaintiff. As Plaintiff has intimated, if such an investigation were to yield a determination that Plaintiff had been involved in an unreported accident, Defendant would have adequate grounds for Plaintiff's termination.

Notably, it was not until after Torres's statement regarding the accident investigation had been made that Torres allegedly made his discriminatory remark. In other words, an investigation that could lead to Plaintiff's termination had begun prior to Torres's alleged discriminatory remark and, therefore, prior to Plaintiff's protected expression. As such, Defendant has a strong argument against Plaintiff's claim of being unfairly targeted for termination as a direct result of his protected expression.

At the summary judgment stage, however, it is not appropriate for the Court to weigh facts. Indeed, it is not the Court's role to determine whether the facts as alleged by both parties are true. Rather, it is the Court's duty to assess the undisputed facts in light most favorable to the non-movant and address the pertinent questions of law. Thus, the Court must conclude that Plaintiff's claim of a causal connection, though weak, is enough to satisfy the third element of a prima facie case.

█ Once it is established that the Plaintiff has offered a prima facie case of retaliatory discharge, it is incumbent upon the Defendant to provide a legitimate non-discriminatory reason for Plaintiff's termination. Defendant has succeeded in offering the Court such a reason.

It is undisputed by Plaintiff that Defendant's investigation yielded the following information: (1) Morales claimed that Plaintiff advised her not to report the incident; (2) Plaintiff agreed to help Morales repair the damage that her vehicle had caused; (3) Maria Temelcovitch, president of the condominium association of the

building damaged by Morales's vehicle informed Defendant by letter that she had conversed with Plaintiff about the accident shortly after it had occurred, and Plaintiff had asked her not to report the incident; and (4) Temelcovitch informed Defendant that Plaintiff had, on a later date, thanked her for not reporting the incident.

Based on the above findings, the Defendant asserts that it had a legitimate non-discriminatory reason for discharging Plaintiff, and the Court agrees. Thus, the burden then shifts once again to the Plaintiff, who must offer evidence that Defendant's claim is pretextual.

■ Plaintiff has provided just enough evidence of pretext to warrant denial of Defendant's motion. Plaintiff asserts that Defendant's termination of Plaintiff was pretextual, based on the fact that neither of the other two participants in the vehicular accident cover-up were fired.

To rebut this assertion, Defendant has offered an affidavit of David Hershberger, an employee who has indicated that Morales was in fact discharged. In addition, Defendant asserts that the other party to the alleged cover-up was not fired due a difference in culpability between the other party and Plaintiff. However, for the Court to weigh these facts against Plaintiff's assertions would be to undertake an effort that is precluded by the strict guidelines of summary judgment.

As further evidence of pretext, Plaintiff again points the Court's attention to the short span of time between when Plaintiff complained of Torres's remark and when Plaintiff was fired.

■ Plaintiff properly notes that a plaintiff's burden of proving pretext at the summary judgment phase is light. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir.1994) ("[T]o withstand summary judgment, a plaintiff need only demonstrate that a genuine issue exists as to whether the reason for the decision was intentional discrimination."). The Court finds that Plaintiff has offered evidence, though slight, that Defendant's reason for Plaintiff's discharge was pretextual. As such, the Court must conclude that there is a basis, however small, upon which a reasonable jury could find that Plaintiff has succeeded in proving his claim of retaliatory discharge.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Motion be, and the same is hereby, DENIED.

DONE AND ORDERED.